IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2022 Session

## COLUMBIA HOUSING & REDEVELOPMENT CORP. v. KINSLEY BRADEN

**Appeal from the Circuit Court for Maury County**
**No. 16922    David L. Allen, Judge**

_____

**No. M2021-00329-COA-R3-CV**

_____

This is a detainer action brought by a landlord to evict its tenant for possessing a firearm in his apartment in contravention of the lease agreement. The landlord, Columbia Housing & Redevelopment Corporation ("Columbia Housing"), provides subsidized housing for the City of Columbia pursuant to the Housing Authorities Law, Tennessee Code Annotated § 13-20-101 to -709, and operates Creekside Acres, a multifamily, low-income public housing complex in Columbia, Tennessee. The tenant voluntarily entered into a lease agreement with Columbia Housing that contained a prohibition against firearms on the premises; nevertheless, the tenant defended the detainer action, contending that the lease agreement violated his rights under the Second Amendment of the United States Constitution. The circuit court ruled in favor of the landlord on the ground that the lease agreement was a valid and enforceable contract, and the tenant voluntarily waived any rights he may have had to possess a firearm on the leased premises. This appeal followed. Significantly, the landlord is a governmental entity "acting as a landlord of property that it owns." *See Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 135 (2002). As such, its actions must comply with the Constitution, *see Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982), and the unconstitutional conditions doctrine "prevent[s] the government from coercing people into giving" up constitutional rights. *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). Although laws "forbidding the carrying of firearms in sensitive places such as schools and government buildings" do not violate the Second Amendment, *see D.C. v. Heller*, 554 U.S. 570, 626 (2008), not "all places of public congregation" are "sensitive places." *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2134 (2022). Moreover, although public housing is government-owned, the leased premises at issue is the tenant's private home, which is not the kind of "sensitive place" where the government may categorically ban firearm possession. *See id.* at 2128. Further, complete prohibitions on possession of handguns in the home for self-defense are "historically unprecedented." *See id.* Therefore, we hold that Columbia Housing's prohibition against handguns in the tenant's "home" is an unconstitutional lease condition. As a consequence, the tenant's possession of a handgun in his apartment, his home, did not

constitute a breach of the lease agreement. Accordingly, the judgment of the circuit court is reversed, and this matter is remanded for further proceedings consistent with this opinion.

## Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

David G. Sigale, Wheaton, Illinois, and Eugene R. Hallworth, Columbia, Tennessee, for the appellant, Kinsley Braden.

Charles M. Molder and Kori B. Jones, Columbia, Tennessee, for the appellee, Columbia Housing & Redevelopment Corporation.

## OPINION

### FACTS AND PROCEDURAL HISTORY

On April 19, 2018, Kinsley Braden signed a lease agreement with Columbia Housing for the privilege of residing at 103 West Willow Street in Creekside Acres. The lease agreement incorporated by reference the Community Housing Rules, which prohibited, *inter alia*, any resident from possessing a firearm on the premises. In relevant part, the Community Housing Rules read: "No Weapons & Firearms. The possession or use of any type of weapon, firearm, or dangerous object is strictly prohibited within the boundaries of the property."

On November 4, 2020, Columbia Housing learned that Mr. Braden had been keeping a handgun in his residence. As a result, Columbia Housing filed a Detainer Summons against Mr. Braden, seeking to evict him for "violation of the [lease agreement], including violation of Tenn. Code Ann. § 68-28-517."[1] On November 20, 2020, the general sessions court entered judgment in favor of Columbia Housing. On January 7, 2021, Mr. Braden appealed the general sessions court's ruling, arguing that, as a law-abiding citizen who was otherwise qualified to possess a firearm, the Second Amendment protected his right to possess a firearm in his residence for self-defense purposes.

---

[1] Tennessee Code Annotated § 68-28-517 has since been re-codified in Tennessee Code Annotated § 66-28-517.

- 2 -

Following a hearing on February 26, 2021, wherein the material facts were stipulated, the circuit court granted judgment in favor of Columbia Housing.[2] In making its determination, the court found Tennessee Attorney General Opinion No. 09-170 (October 26, 2009) instructive. The trial court did not include the text of the opinion in its ruling; however, the Attorney General's opinion reads:

> Under both case law and the Act, a landlord and tenant are free to establish terms governing the use of the property. Tenn. Code Ann. § 66-28-201(a); *Planters Gin. Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889–90 (Tenn. 2002). A landlord and tenant may, therefore, mutually agree through a lease to prohibit the possession of firearms on the premises. Tenn. Code Ann. § 66-28-201(a). Under the Act, a landlord may also prohibit firearms by adopting a rule that satisfies the requirements of Tenn. Code Ann. § 66-28-402(a). It states:
>
>> A landlord, from time to time, may adopt rules or regulations, however described, concerning the tenant's use and occupancy of the premises. It is enforceable against the tenant only if: (1) Its purpose is to promote the convenience, safety, or welfare of the tenants in the premises, preserve the landlord's property from abusive use, or make a fair distribution of the services and facilities held out for the tenants generally; (2) It is reasonably related to the purpose for which it is adopted; (3) It applies to all tenants in the premises; (4) It is sufficiently explicit in its prohibition, direction, or limitation of the tenant's conduct to fairly inform the tenant of what the tenant must or must not do to comply; (5) It is not for the purpose of evading the obligation of the landlord; and (6) The tenant has notice of it at the time the tenant enters into the rental agreement.
>
> If the landlord complies with the requirements of Tenn. Code Ann. § 66-28-402(a), and that rule is in effect at the time the lease is executed, then the rule will be enforceable.

Tenn. Op. Att'y Gen. No. 09-170 (Oct. 26, 2009).

After considering the Attorney General's opinion, Tennessee Code Annotated § 66-28-201(a) and -402(a), as well as other relevant authority, the circuit court determined that:

---

[2] The case was tried on the Civil Warrant; no additional pleadings (amended complaints, answers or counter complaints) were filed in the circuit court. However, Mr. Braden filed in the circuit court a document titled "Defendant's Response" in which he asserted his Second Amendment right to bear arms.

Tennessee Code Annotated § 66-28-201(a) makes clear that a landlord and tenant are *free to establish terms governing the use of the property* and, therefore, landlords and tenants may mutually agree, through a Lease Agreement, to prohibit the tenant's ability to possess a firearm while on the premises of the landlord's property.

(footnote omitted). The circuit court further reasoned:

Mr. Braden voluntarily waived any *rights* he may have to possess a firearm on the premises of [Columbia Housing], by agreeing to be bound by the terms of the Lease Agreement (with [Columbia Housing]), under simple contract principles. Kinsley Braden breached the Lease Agreement with [Columbia Housing] due to his admitted possession of a firearm on November 4, 2020, which is strictly prohibited. [Columbia Housing] is entitled to Judgment for eviction.

This appeal by Mr. Braden followed.

### ISSUES

Mr. Braden purports to raise three issues for our consideration on appeal. He contends he should not be evicted from Creekside Acres because (1) Columbia Housing's firearm prohibition violates his Second Amendment right to possess a firearm; (2) Columbia Housing's firearm prohibition violates the Equal Protection Clause of the Fourteenth Amendment; and (3) even if the lease agreement does effectively prohibit firearm possession, the agreement itself is an unenforceable adhesion contract. However, only one issue was presented to and decided by the trial court. This is evident from the final judgment entered in the trial court:

### Issue for Determination

Mr. Braden, through counsel, raised a constitutional (2nd Amendment) defense to the prohibition as to firearms which is contained within the parties' Lease Agreement which, given that all other matters have been stipulated to, brings the Court to the ultimate <u>issue</u>:

Can [Columbia Housing] prohibit its tenants, in this case Kinsley Braden, from possessing firearms on its properties?

Accordingly, this is the only issue that is properly before this court as the other issues are deemed waived.[3]

## STANDARD OF REVIEW

The material facts are not disputed, and the issue before us presents a question of law. Our review of a trial court's determinations on issues of law is de novo, without any presumption of correctness. *See Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 895 (Tenn. 2011).

## ANALYSIS

Mr. Braden agreed to be bound by the terms of the lease agreement that incorporated by reference the Community Housing Rules, which prohibit residents from possessing firearms in their residences. Yet, on November 4, 2020, Mr. Braden was in possession of a firearm on the leased premises in violation of the lease agreement. Nevertheless, Mr. Braden contends that Columbia Housing cannot constitutionally prohibit him from possessing a firearm in his residence.

As a threshold matter, we recognize that Columbia Housing is a government entity acting as the landlord of the Creekside Acres residences. *See Rucker*, 535 U.S. at 135. For this reason, the actions of Columbia Housing and the policies of Creekside Acres must conform to the Constitution. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982) (explaining that the Constitution "protects individuals only from governmental . . . action").[4]

The Second Amendment to the United States Constitution protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II. In *D.C. v. Heller*, the United States Supreme Court established that the "central component" of the Second Amendment is the "the inherent right of self-defense." 554 U.S. 570, 628 (2008). Most recently, in *Bruen*, the United States Supreme Court noted that the Second Amendment protects the right of law-abiding citizens to carry and possess handguns both inside and outside the home for the purpose of self-defense. 142 S. Ct. at 2156. In making its determination the Court stated:

---

[3] "Issues not raised in the trial court . . . may be deemed waived when presented to this Court." *Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 301 (Tenn. 2020) (quoting *Hodge v. Craig*, 382 S.W.3d 325, 334 n.3 (Tenn. 2012)).

[4] Generally, however, under the Uniform Residential Landlord and Tenant Act, parties to a residential lease may agree to prohibit possession of a firearm within the leased premises. *See* Tenn. Code Ann. § 66-28-201(a) (2015) (providing that a "landlord and tenant may include . . . terms and conditions not prohibited by this chapter or other rule of law").

In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Id.* at 2126 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

In the case before us, the circuit court reasoned that by agreeing to the Community House Rules in the lease agreement, which prohibit possession of a firearm within the leased premises, "Mr. Braden voluntarily waived any rights he may have to possess a firearm on the premises." However, in reaching this conclusion the circuit court did not consider the unconstitutional conditions doctrine, which "prevent[s] the government from coercing people into giving" up constitutional rights. *See Koontz*, 570 U.S. at 604.

The unconstitutional conditions doctrine provides that a governmental entity "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972); *see Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) (explaining that "the government may not require a person to give up a constitutional right . . . in exchange for a discretionary benefit"); *W. & S. Life Ins. Co. v. State Bd. of Equalization*, 451 U.S. 648, 657 (1981) ("[A] State may not impose unconstitutional conditions on the grant of a privilege." (emphasis omitted)).

The constitutionally protected interest or right at issue here arises under the Second Amendment to the United States Constitution, which protects "the right of the people to keep and bear Arms." U.S. CONST. amend. II.[5] Self-defense is the "central component of th[at] right." *Heller*, 554 U.S. at 599 (emphasis omitted). Thus, "law-abiding, responsible citizens" have the right "to use arms in defense of hearth and home." *Id.* at 635.

As previously discussed, because Columbia Housing is a governmental entity "acting as a landlord of property that it owns," *see Rucker*, 535 U.S. at 135, its actions must comply with the Constitution. *See Lugar*, 457 U.S. at 930 (explaining that the Constitution "protects individuals only from governmental . . . action"). Thus, unless an exception applies, requiring Mr. Braden to surrender the "central component" of his Second Amendment rights for the benefit of public housing is an unconstitutional condition. *See*

---

[5] The Amendment codified a pre-existing right to keep and bear arms. *See D.C. v. Heller*, 554 U.S. 570, 592 (2008) ("[I]t has always been widely understood that the Second Amendment . . . codified a *pre-existing* right.").

*also Holt v. Richmond Redev. & Hous. Auth.*, 266 F. Supp. 397, 401 (E.D. Va. 1966) ("[A] tenant's continued occupancy in a public housing project cannot be conditioned upon the tenant's foregoing his Constitutional rights." (citing *Lawson v. Hous. Auth. of Milwaukee*, 70 N.W.2d 605 (Wis. 1955))).

One such exception is the concept of "sensitive places," a concept Columbia Housing relies upon to justify its prohibition. In *Heller*, the Supreme Court held that the government could constitutionally prohibit possession of firearms in "sensitive places." 554 U.S. at 626. Under this exception, numerous courts have held that laws "forbidding the carrying of firearms in sensitive places such as schools and government buildings" do not violate the Second Amendment. *See Heller*, 554 U.S. at 626; *see also Bruen*, 142 S. Ct. at 2133. Moreover, and significantly, some scholars believe that the "sensitive places" concept may apply to public housing. *See* Jamie L. Wershbale, *The Second Amendment Under a Government Landlord: Is There a Right to Keep and Bear Legal Firearms in Public Housing?*, 84 St. John's L. Rev. 995, 1018–20 (2010).

More recently, however, the Court in *Bruen* clarified that, when determining whether a place is a "sensitive place," courts should look to those places where weapons were historically "altogether prohibited" and determine whether it is "settled that [certain] locations were 'sensitive places,'" then "use analogies to those historical regulations of 'sensitive places' to determine [whether] modern regulations prohibiting the carry of firearms in *new* and analogous sensitive places are constitutionally permissible." 142 S. Ct. at 2133. Thus, we must determine whether handguns have been historically prohibited in public housing.

Public housing constitutes both an individual's home and a building owned by a state's government; however, it remains largely unsettled whether public housing developments could constitutionally prohibit firearm possession under both the Second Amendment to the United States Constitution and nearly identical provisions of certain state constitutions. *See, e.g.*, *People v. Cunningham*, 126 N.E.3d 600, 615 (Ill. App. Ct. 1st Dist. 2019) (holding that a statute prohibiting visitors to public housing units from possessing firearms on the property did not violate the Second Amendment); *Doe v. Wilmington Hous. Auth.*, 88 A.3d 654, 668–69 (Del. 2014) (concluding that the Delaware Constitution prohibited public housing authorities from banning firearms in public housing developments); *Lincoln Park Hous. Comm'n v. Andrew*, No. 24459, 2004 WL 576260, at *1 (Mich. Ct. App. Mar. 23, 2004) (per curiam) (holding that a prohibition on firearm possession in public housing passed constitutional muster under the Michigan Constitution). Noticeably, various states have come to different conclusions regarding whether a ban on firearm prohibition within a public housing development is permissible. Thus, it cannot be said that public housing developments have historically "altogether prohibited" possession of firearms on the property.

Moreover, while the United States Supreme Court has identified "legislative assemblies, polling places, and courthouses" as "sensitive places," *Bruen*, 142 S. Ct. at 2133, the Court has continued to emphasize that the Second Amendment must protect the right of "law-abiding citizens to use arms in defense of *hearth and home*." *Heller*, 554 U.S. at 635 (emphasis added). For this reason, we cannot say that an individual's public housing unit is analogous to that of other established sensitive government buildings. Thus, in light of the Supreme Court's most recent decision in *Bruen* and keeping in mind the presumptively unconstitutional status of Columbia Housing's policy based on the Supreme Court's decision in *Heller*, we conclude that a total ban on the ability of law-abiding residents—like Mr. Braden—to possess a handgun within their public housing unit for the purpose of self-defense is unconstitutional under the Second Amendment.

Because Columbia Housing is a government entity acting as a landlord of property it owns, it must establish that its leasehold restrictions on firearms is "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130. We find that it has failed to do so. Moreover, because broad-reaching prohibitions on possession of handguns in the home for self-defense are "historically unprecedented," *see id.* at 2128, we hold that Columbia Housing's overly broad prohibition against handguns in Mr. Braden's home is an unconstitutional condition. Thus, the prohibition against handguns is an unenforceable provision of Mr. Braden's lease agreement. Accordingly, Mr. Braden's possession of a handgun in his home did not constitute a breach of the lease agreement.

## IN CONCLUSION

The judgment of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal assessed against the Appellee, Columbia Housing & Redevelopment Corporation.

_____
FRANK G. CLEMENT JR., P.J., M.S.